IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION  NO._____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| OTIS WORLDWIDE CORPORATION d/b/a OTIS ELEVATOR COMPANY, | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to a Charging Party.  The United States Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleges that Defendant Otis Worldwide Corporation d/b/a Otis Elevator Company ("Defendant" or "Otis") discriminated against Charging Party based on his disabilities when it refused to provide a reasonable accommodation for his disabilities and retaliated against him for making an accommodation request.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant is a company based in Farmington, Connecticut, continuously conducting business in the Commonwealth of Massachusetts, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) & (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Charging Party filed Charge No. 523-2021-01864 with the EEOC alleging violations of the ADA by Defendant.

8. On September 28, 2022, the EEOC issued to Defendant a Letter of Determination on Charge No. 523-2021-01864 finding reasonable cause to believe that the ADA was violated

and inviting Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The EEOC engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On February 7, 2023, the EEOC issued to Defendant a Final Notice of Failure of Conciliation advising Defendant that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Defendant has engaged in unlawful employment practices in violation of Sections 102(a) and (b)(5) of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5) and Section 503(a) of Title I of the ADA, 42 U.S.C. § 12203(a) by failing to provide Charging Party with a reasonable accommodation for his disabilities and by retaliating against him after he requested accommodation. Specifically:

   a. Otis contracts to construct, repair, modernize and maintain elevators, escalators, and related equipment throughout the United States, including in a facility located in Canton, Massachusetts.

   b. On or about February 8, 2021, Charging Party was hired as an Assistant Mechanic in the Construction Department at Otis's Canton, Massachusetts facility.

   c. Charging Party is an individual diagnosed with Autism Spectrum Disorder ("ASD") and attention-deficit/hyper-activity disorder ("ADHD"), which substantially limit brain function and the major life activities of thinking and concentration when there is a lot of surrounding noise, including voices and

environmental noise.

d. On or about March 30, 2021, Charging Party submitted a completed Otis ADA Accommodations Request Form to Otis's Human Resources Department ("HR") via the company's online portal.

e. Charging Party's submission to HR included a certification by his treating psychologist of his ASD and ADHD diagnoses and explained his heightened sensitivity to loud ambient or vocal noises and its impact on his ability to think and concentrate.

f. The completed ADA Accommodations Request Form also explained that Charging Party thrived in environments where he could work somewhat apart from loud ambient or vocal noises and recommended that Charging Party be "reassigned to a role or environment with fewer competing auditory inputs, vocal or otherwise."

g. Between April 2021 and November 2021, Charging Party made repeated efforts to confer with Otis's HR Department and his supervisors to find an assignment in the Construction Department and in Otis's other departments that would accommodate his disabilities.

h. On a few occasions, Charging Party was assigned to work with a Construction Department adjuster, which were assignments that did not involve the noise and crowds typically present in active construction sites.

i. Although Charging Party told Otis that adjuster assignments were a suitable accommodation for his disabilities, Otis continued to assign Charging Party to active construction site assignments.

j. On or about April 6, 2021, Charging Party told Otis's HR Department that his

    reassignment to an active construction site was problematic for his disabilities and, as a result, posed a risk to his and others' safety, and asked them to speed along the accommodation process for him.

k. Charging Party's request was forwarded to Jeanie Demshar, Associate Director of Otis's Labor and Employment Relations Department, and to his supervisor at the time, David Martin.

l. On or about April 20, 2021, Supervisor Martin suggested that Charging Party could work in the Service or Repair Departments, and said that his accommodation request would be "taken care of" during a "manpower" meeting on or about April 22, 2021.

m. Although Charging Party was assigned to work with a Construction Department adjuster on April 26, 2021, he was again reassigned to work an active construction site assignment on May 3, 2021.

n. On or about May 9, 2021, Charging Party reported that he had injured his foot in March 2021 while hoisting elevator rails into an elevator shaft, and was continuing to experience symptoms from the injury.

o. Otis placed Charging Party on "light duty" which included performing administrative work and office tasks.

p. On or about May 21, 2021, Otis placed Charging Party on an unpaid medical leave of absence.

q. Otis claimed that it placed Charging Party on an unpaid leave of absence due to the lack of alternative assignments to accommodate Charging Party's foot injury and his ASD/ADHD disabilities.

r. On or about May 28, 2021, Charging Party provided Otis with a note from his orthopedic surgeon clearing him to return to work without any restrictions related to his foot injury, effective June 1, 2021.

s. Charging Party did not receive a response to this May 28, 2021 communication.

t. On or about July 8, 2021, Charging Party submitted another doctor's note to Otis, stating that he was released to work full duty, with breaks as needed.

u. Charging Party did not receive a response to his July 8, 2021 communication.

v. On or about July 22, 2021, Charging Party e-mailed his supervisor at the time, Jim Nelson, asking, "Have I been terminated by Otis?"

w. Nelson responded that Charging Party had not been terminated and suggested that Charging Party contact Jack Owens, Otis Branch Manager, to confirm his employment status.

x. On or about July 23, 2021, Charging Party e-mailed Branch Manager Owens, informed him that he had been submitting medical documentation since June 2021 and asked, "[c]an you fill me in on what's going on, so I know how to proceed?"

y. On or about July 26, 2021, Charging Party then spoke to Supervisor Nelson and explained to him that he could perform work in the Construction Department if it was a site that was not particularly loud with many competing noises, and that he would consider such a role an accommodation of his disabilities.

z. In late July 2021, Charging Party learned that Owens had told his union representative that he was not being allowed to return to work due to his pending accommodation request, without Charging Party's consent.

aa. On August 3, 2021, Owens e-mailed Demshar telling her that Charging Party's

union representative wanted to speak with her regarding Charging Party, noting that Owens told the union representative that Demshar was "going to have a conversation with [Charging Party] about his disability, so we could place him in a safe work environment."

bb. On or about August 3, 2021, Charging Party spoke to Demshar concerning his accommodation request about work assignments that would accommodate his disabilities. Charging Party told Demshar that reassignment to an Assistant Mechanic role in the Service, Repair, or Modernization departments could also be viable accommodation options.

cc. On or about August 3, 2021, Demshar provided Charging Party with an "Otis Return to Work Form" and informed him that his physician would need to fill out the form.

dd. On or about August 5, 2021, Charging Party's physician filled out the "Otis Return to Work Form", noting that Charging Party was permitted to return to work without restrictions on August 9, 2021.

ee. On or about August 5, 2021, Charging Party provided Demshar with the completed "Otis Return to Work Form."

ff. In August 2021, Demshar refused to accept the written confirmation from Charging Party's doctor from August 5, 2021 stating that he could return to work without restrictions, and claimed that there were no vacant assignments that would accommodate Charging Party's disabilities.

gg. Otis's own in-house physician cleared Charging Party to return to work on or about September 9, 2021, but, when Charging Party attempted to return to work, Otis

claimed that there were no Assistant Mechanic positions available that would accommodate his disabilities.

hh. On or about September 23, 2021, Charging Party emailed Demshar and his union stating that he was reaching out:

> …to have the required interactive dialogue, despite this not being my obligation. It never happened. I watched other people get hired after I turned in my paperwork. I went to see the doctor in mid-May and still had not had the interactive dialog. I told HR I had a spot that worked. I was ignored and transferred.

ii. Throughout October 2021, Otis continued to refuse to allow Charging Party to return to work or to provide him with a reasonable accommodation.

jj. Between April 2021 and November 2021, there were several available or vacant positions for which Charging Party was qualified that would have accommodated his disabilities.

kk. At no time did Otis engage with Charging Party about his accommodation request, his disabilities, or his accommodation needs.

ll. Instead, Otis said it "could not have [Charging Party] working because of [his] ADA request," or similar words to the same effect.

mm. Otis did not permit Charging Party to return to work because he requested a reasonable accommodation for his disabilities.

nn. Charging Party resigned from his position on November 4, 2021, after months of being forced to remain on unpaid leave and not being permitted to return to work.

13. As a result of the foregoing, Charging Party suffered harm.

14. As specifically set forth in Paragraph 12 above, Defendant engaged in unlawful practices in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a)

and (b)(5)(A), by failing to engage in a good faith interactive process to identify reasonable accommodations and provide Charging Party with a reasonable accommodation.

15. Defendant engaged in unlawful practices in violation of Section 503(a) of Title I of the ADA, 42 U.S.C. §§ 12203(a) by retaliating against Charging Party for requesting a reasonable accommodation for his disabilities.

16. The unlawful employment practices complained of in Paragraph 12(a)-(nn) above were intentional.

17. The unlawful employment practices complained of in Paragraph 12(a)-(nn) above caused Charging Party to suffer pecuniary and non-pecuniary damages including, but not limited to, lost wages and mental anguish and emotional distress.

18. The unlawful employment practices complained of in Paragraph 12(a)-(nn) above were done with malice or with reckless indifference to Charging Party's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating based on disability including, but not limited to, failing to provide reasonable accommodations to qualified individuals with disabilities that do not constitute an undue hardship.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Charging Party whole by providing appropriate back pay

with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.      Order Defendant to make Charging Party whole by reinstating him or awarding front pay in lieu thereof, in amounts to be determined at trial.

      E.      Order Defendant to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

      F.      Order Defendant to make Charging Party whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

      G.      Order Defendant to pay Charging Party punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

      H.      Grant such further relief as the Court deems necessary and proper in the public interest; and

      I.      Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Dated: March 21, 2023

                                        Respectfully submitted,

                                        GWENDOLYN Y. REAMS
                                        Acting General Counsel

                                        CHRISTOPHER LAGE
                                        Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street NE
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein@eeoc.gov

KIMBERLY CRUZ
Supervisory Trial Attorney
kimberly.cruz@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

/s/ Alison Bitterly
**ALISON BITTERLY**
Trial Attorney
alison.bitterly@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Boston Area Office
15 New Sudbury Street, Room 475
Boston, Massachusetts 02203
(617) 865-3693