UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| UNITED STATES EQUAL | ) | |
| EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 23-10612-MJJ |
| v. | ) | |
| | ) | |
| OTIS WORLDWIDE CORPORATION | ) | |
| and OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL
[Docket No. 69]

April 29, 2025

Boal, M.J.

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), has

moved to compel defendants Otis Worldwide Corporation and Otis Elevator Company

(collectively "Otis")[1] to produce (1) documents withheld as privileged; (2) information regarding

placement opportunities at three Otis locations; and (3) comparator documents.  Docket No. 69.[2]

For the following reasons, this Court grants in part and denies in part the EEOC's motion.

---

[1] The complaint names Otis Worldwide Corporation and Otis Elevator Company.  Amended
Complaint ("AC") at ¶ 4.  The EEOC alleges that, at all relevant times, the defendants have
operated as a single employer and/or integrated enterprise.  Id. at ¶ 7.  The instant motion is
brought against both defendants and therefore this decision applies to both entities.

[2] On February 5, 2025, Judge Joun referred this case to the undersigned for full pretrial
management, including report and recommendation on dispositive motions.  Docket No. 72.

I.    <u>RELEVANT BACKGROUND</u>

In this action, the EEOC alleges that defendants discriminated against Bateman when they refused to provide a reasonable accommodation for his disabilities and retaliated against him for making an accommodation request.  On or about February 8, 2021, Bateman was hired as an Assistant Mechanic in the Construction Department.  AC at ¶ 13(g).  The EEOC alleges that, on or about March 30, 2021, Bateman made a formal request for accommodation of his disabilities, autism and ADHD.  <u>Id.</u> at ¶ 13(k).  Between April and November 2021, Bateman made repeated efforts to confer with Otis's Human Resources Department and his supervisors to find an assignment that would accommodate his disabilities.  <u>Id.</u> at ¶ 13(m).

On or about May 9, 2021, Bateman reported a foot injury that occurred while he was on the job on March 9, 2021.  <u>Id.</u> at ¶ 13(u); Docket No. 67 at 3.  Otis placed him on light duty and then on unpaid leave on or about May 21, 2021.  <u>Id.</u> at ¶¶ 13(w)-(x).  The EEOC alleges that, throughout October 2021, Otis continued to refuse to allow Bateman to return to work despite being medically cleared to do so or to provide him with a reasonable accommodation.  <u>See generally id.</u> at ¶¶ 13(u)-(qq).

Bateman's request for an accommodation was forwarded to Jeanie Demshar, Associate Director of Otis's Labor and Employment Relations Department.  <u>See id.</u> at ¶ 13(q).  Demshar is an attorney.  Declaration of Jeanie Demshar (Docket No. 71-1) ("Demshar Decl.") at ¶ 2.  Since the beginning of 2021, she was responsible for providing labor and employment law guidance and direction to management for matters affecting Otis's Eastern Operating Unit.  <u>Id.</u> at ¶ 6.  She also investigated labor grievances and unfair labor practice charges and was responsible for grievances from initial filings through arbitration for the Eastern Operating Unit.  <u>Id.</u>  She also provided guidance on employee accommodation requests for unionized employees in the Eastern

Operating Unit, and, in that role, performed both legal and employee relations functions.  Id. at ¶ 7.  In her legal role, she identified, investigated, and mitigated potential risks to the organization and provided legal advice to management related to unionized employee accommodation requests.  Id.

The EEOC filed its motion to compel on November 22, 2024.  Otis filed an opposition on December 6, 2024.  This Court heard oral argument on February 27, 2025.

II.    STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit."  Id.

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information.  See Fed. R. Civ. P. 37(a)(3).  "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant."  Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted).  "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper."  Id. (citation omitted).

One claiming privilege, "bears the burden of establishing that . . . [the privilege] applies . . . and that it has not been waived."  In re Keeper of Records (Grand Jury Subpoena Addressed to

XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); see also Amgen, Inc. v. Hoecsht Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000) ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived.").  Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege.  Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012).

III.    ANALYSIS

Otis has withheld (1) four emails and a document written by Demshar on the basis of work product and attorney-client privilege;[3] (2) information regarding the existence of positions, roles, or assignments for three additional locations where Bateman could have been placed; and (3) documents about two other complaints of disability discrimination.  This Court addresses EEOC's motion to compel each of these categories in turn.

A.    Privileged And Work-Product Protected Documents

On September 1, 2021, Bateman sent an email to Demshar asking whom he should contact in order to initiate "the oral step of the grievance process."  Docket No. 40-2 at 2.  On September 21, 2021, Bateman informed Demshar that he had scheduled an intake appointment with the Massachusetts Commission Against Discrimination.  See Docket No. 40-3 at 2.  On September 23, 2021, Demshar sent an email to HR manager Kim Pendleton and copying HR manager Kelly McGowan.  Docket Nos. 69-1 at 6-7; 70-13.  The email had the subject line

---

[3] In its privilege log, Otis only asserted attorney-client privilege for three of the five documents. Docket No. 69-1 at 2 (citing Docket No. 70-13).  However, in its opposition, Otis argues that all five documents are covered by the attorney-client privilege.  Docket No. 71 at 11-12.  This Court considers both claims with respect to the subject documents.

"Cameron Bateman." Docket No. 70-13. This is one of the emails that the EEOC seeks to compel. Docket No. 69-1 at 1, 6-7.

On September 29, 2021, Bateman texted Demshar stating, in part, "FYI, I think the 10-day timeline for the step one is up next Thursday, so if you're able to find some time before your schedule gets loaded up, can you send a few possibilities of availability so I can make sure [the union representative] can make it?" Docket No. 40-4 at 2. In the same text, Bateman requested information from Demshar "so [they] [could] be ready to hopefully resolve the grievance one way or the other," and informed Demshar that his intake meeting had been rescheduled for that Friday. Id. at 3-4.

On October 5, 2021, Demshar and Bateman spoke on the phone. Docket No. 40 at 4. That same day, Demshar sent an email with the subject line "Cameron Bateman" to Jack Owens, James Nelson, David Martin, Paul Devries, and Jay Edwards after presumably meeting with them earlier in the day. Docket No. 70-7 at 2. Four of these five recipients, with the exception of Edwards, were identified as individuals with discoverable information by Otis in its amended initial disclosures. Docket No. 70-11 at 2-3. Otis has produced this email and the subsequent responses in its chain. Docket No. 70-7. However, Otis redacted the portion of Demshar's email that follows her statement of: "Below is a summary of what I need from you. I understand some of this may take longer than other parts of the request. Please get me what you can as quickly as you can (again, thank you)." Id. at 2-3. The EEOC seeks to compel the redacted portions. Docket No. 69-1 at 1, 5.

On October 6, 2021, Demshar sent an email with the subject line "RE: Cameron Bateman" to Owens and Devries. Docket No. 70-13. On October 11, 2021, Demshar sent herself an email with the subject line "NOTES – Cameron Bateman – DISCUSSION w/ Jack,

Jay, James, Dave, Paul."  Docket No. 70-13.  The EEOC moves to compel the production of these two emails.  Docket No. 69-1 at 1, 5.

The EEOC also moves to compel a timeline and notes that Demshar prepared.  Docket Nos. 69-1 at 1, 7; 70-13.  While the privilege log does not provide a date for this document, Otis stated that it was created in 2021 and includes information "up to September 9, 2021, or later." Docket No. 70-16 at 1-2.

1.    The Elements Of Work Product

The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative.[4]  Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947).  "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation." Amgen Inc., 190 F.R.D. at 290.  There are two categories of work product: opinion work product, which encompasses "mental impressions, conclusions, opinions or legal theories of an attorney," and fact or ordinary work product, which "embrac[es] the residue."  In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014 (1st Cir. 1988).

A document is entitled to protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation."  State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in original) (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)).  The "because of" standard is intended to sweep in a broader

---

[4] Federal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question.  Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997).

6

universe of documents than simply those "prepared primarily or exclusively to assist in litigation." In re Grand Jury Subpoena, 220 F.R.D. 130, 146 (D. Mass. 2004) (internal citation and quotation omitted). However, the standard does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Maine, 298 F.3d at 70.

Work product protection is not waived simply by disclosure to a third person. Bryan v. ChemWerth, Inc., 296 F.R.D. 31, 40 (D. Mass 2013). Rather, it is waived "when the documents are used in a manner contrary to the doctrine's purpose," such as where disclosure is made to an adversary or potential adversary. Id.

2.      The Elements Of Attorney-Client Privilege

The attorney-client privilege protects communications made in confidence by a client to his or her attorney in order to obtain legal advice. In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001) (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). The privilege assures both attorneys and clients that discussions regarding their cases which are made in confidence will remain undiscoverable. Amgen Inc., 190 F.R.D. at 289. "Without this assurance, attorneys and clients might be inhibited from engaging in the free, complete and candid exchange of information that is the cornerstone of an effective attorney-client relationship." Id. (quoting Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 13 (D. Mass. 1993)). Nevertheless, "[b]ecause it stands in the way of [the] right to every man's evidence, the privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client." In re Grand Jury Subpoena, 274 F.3d at 571 (citing Fisher v. United States, 425 U.S. 391, 403 (1976)).

3.    The Five Documents Are Protected
       By Work Product And/Or The Attorney-Client Privilege

This Court has reviewed the subject documents <u>in</u> <u>camera</u> and finds them to be

protected as work product and/or attorney-client privilege.  As discussed in this Court's previous

opinion, Attorney Demshar wore two hats.  She was an in-house counsel responsible for

investigating union grievances and providing guidance on employee accommodation requests.

<u>See</u> Docket No. 50 at 3.  As such, she might prepare documents in the ordinary course of

business that "would have been created in essentially similar form irrespective of the litigation."

<u>Maine</u>, 298 F.3d at 70.  Indeed, in its previous decision, this Court found that the subject

documents there were not protected.  Docket No. 50 at 9.

Ms. Demshar also has a legal function in that, in potential litigious circumstances,

she documents relevant evidence and constructs timelines for the purpose of testing, assessing,

the risks attendant to, and establishing the defenses to anticipated allegations and legal claims.

Demshar Decl. at ¶ 11.  In that role, she works with Otis' managers and other members of human

resources to gather information and documentation.  <u>Id</u>.  After review of the five documents, this

Court finds that the redacted information and/or the documents fall under the rubric of

Demshar's second role and that therefore the information is protected.  This Court also finds the

EEOC's remaining arguments unpersuasive.  EEOC's motion to compel the production of these

documents is therefore denied.

B.    Information Regarding Existence Of Positions, Roles, Or Assignments
       For Three Additional Locations Where Bateman Could Have Been Placed

The EEOC also moves to compel information responsive to Interrogatory No. 17, which

seeks to identify all assistant mechanic, apprentice, or helper employees working out of Otis's

Canton, Delta Beckwith, Fall River, Worcester, and Providence locations during 2021.  Docket

8

No. 70-9 at 19.

Otis agreed to provide three separate lists of assistant mechanics/fourth-year apprentices of helpers who were actively employed by Otis for each of its Canton and Delta Beckwith locations (1) as of January 1, 2021, (2) as of December 31, 2021, and (3) who were separated during 2021.  Id. at 20-21.  Bateman worked at the Canton location, from which the Delta Beckwith location was less than a mile away.  Docket No. 71 at 15.  Otis withheld the requested information for the Fall River, Providence, and Worcester locations because it asserts that: (1) Bateman never requested to work at those sites; (2) the sites were 30-60 miles away from Bateman's home; and (3) the operative collective bargaining agreement ("CBA") prevented Otis from unilaterally placing Bateman at the Providence or Worcester locations because they were staffed by another Local.  Docket No. 71 at 15-17.

Reassignment to other available locations, including geographically distant locations, may often be a reasonable accommodation.  See Eustace v. Springfield Pub. Sch., 463 F. Supp. 3d 87, 111 (D. Mass. 2020); Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., LP, No. 5:22-CV-252-FL, 2023 WL 6323795, at *4 (E.D.N.C. Sept. 28, 2023) (compelling production of information about vacant positions at other Defendant locations by finding Plaintiff's self-imposed 25-mile radius from employee's store to be a "reasonable distance"); Sturm v. UAL Corp., No. CIV. A. 98-264, 2000 WL 1300396, at *15 (D.N.J. Sept. 5, 2000) ("Where, as here, the employee claims to be willing to relocate, the Court sees no reason why a transfer to a different city to a facility that has a permanent, vacant position for which the disabled employee is qualified could not be considered a reasonable accommodation.").

 The EEOC maintains that Bateman told Demshar that he was open to traveling to work at locations other than the two for which Otis has produced the requested information.  Docket

No. 69-1 at 15.  The requested information is therefore relevant to the EEOC's theory of the case.  While the CBA, along with other factors, may ultimately determine whether reassignment to positions at these three locations would have been a reasonable accommodation, that is a decision for another day.  Accordingly, this Court grants the request.  Otis must produce the requested information within two weeks of the date of this order.

       C.    <u>Comparator Evidence</u>

The EEOC also moves to compel documents responsive to Request for Production No. 41, which seeks comparator evidence.  Docket No. 69-1 at 17-18. After Otis objected, and in an effort to compromise, the EEOC agreed to limit its request to complaints of disability discrimination in Otis's Eastern Operating Unit in 2021.  <u>Id</u>. at 18.  Otis subsequently confirmed that there were two responsive complaints of disability in 2021 but declined to produce them on the basis of relevance.  Docket Nos. 70-15 at 1-2; 71 at 17-18.  It represents that one complaint involved a Florida matter for which Demshar had no responsibility.  The other complaint, with which Demshar had some involvement, was a New York matter that included an age claim and did not involve a request to accommodate disabilities similar to those of Bateman.  <u>Id.</u> at 18.

Otis does not dispute that comparator evidence in general is relevant to the case at bar but rather these two complaints are irrelevant.  When evaluating comparators, "reasonableness is the touchstone; while the plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances."  <u>Diaz v. City of Somerville</u>, 59 F.4th 24, 32 (1st Cir. 2023) (citation omitted). The test is:

> whether a prudent person looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or

demands, a like result.  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.

Id. citing Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 64, 66-67 (1st Cir. 2004).

For this reason, comparator discovery is not boundless.  See, e.g., Lee v. Pub. Co. Acct. Oversight Bd., No. CV 21-1006 (CKK), 2023 WL 4234660, at *4–5 (D.D.C. June 28, 2023); Hartman v. Sunbelt Rentals, Inc., No. 4:21CV3328, 2022 WL 17253529, at *9-10 (D. Neb. Nov. 28, 2022).  Comparator discovery is relevant and proportional if it is limited to, inter alia, the same form of discrimination claimed by the plaintiff and to the same department or decisionmaker who may have contributed to the employment decisions that are the subject of the plaintiff's complaint.  Id.  Such discovery is also limited given that it involves the private information of non-party employees.  Here, I find that Otis does not have to produce the Florida complaint but does have to produce the New York complaint given Demshar's involvement in that action.  However, Otis may redact the name of the individual employee involved in that case.  The New York complaint must be produced within two weeks of the date of this order.

IV.    ORDER

For the foregoing reasons, this Court grants in part and denies in part the EEOC's motion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

11